# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FALLBROOK HOSPITAL CORPORATION,<br><br>     Plaintiff,<br><br>   vs.<br><br>CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE (CNA/NNOC), AFL-CIO<br><br>     Defendant. | CASE NO. 13cv1233-GPC(WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT WITH PREJUDICE**<br><br>[Dkt. No. 23.] |

Before the Court is Defendant California Nurses Association/National Nurses Organizing Committee's ("CNA/NNOC" or "CNA") motion to dismiss the third amended complaint ("TAC") under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. No. 23.) Plaintiff Fallbrook Hospital Corporation d/b/a Fallbrook Hospital filed an opposition and Defendant filed a reply. (Dkt. Nos. 25 & 26.) The motion is submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). Based on the analysis below, the Court GRANTS Defendant's motion to dismiss with prejudice.

**Background**

Plaintiff Fallbrook Hospital operates an acute care hospital in Fallbrook,

California. (Dkt. No. 20, TAC ¶ 5.) Defendant CNA/NNOC is a labor organization and was certified by the National Labor Relations Board ("NLRB") on May 24, 2012 as the exclusive collective bargaining representative of registered nurses employed by Fallbrook Hospital. (Id. ¶¶ 6, 7.) According to the third amended complaint, around March 13, 2012, the parties met to discuss an agreement between Fallbrook Hospital and the CNA "which would define certain terms and conditions to govern any organizing which might be conducted by the CNA among Registered Nurses employed by Fallbrook, and which would define a framework for the negotiation of an initial collective bargaining agreement in the event the CNA was certified by the NLRB as the exclusive collective bargaining agent for Fallbrook's Registered Nurses." (Dkt. No. 20, TAC ¶ 14.) At the meeting, the parties entered into a proposed labor relations agreement ("proposed LRA") where the parties agreed to submit any unresolved disputes about compliance with or construction of the Agreement to final and binding arbitration, including disputes related to the conduct of any collective bargaining negotiations which might ensue between the parties out of organizing activity on the part of the CNA at Fallbrook. (Id. ¶ 15.) They also agreed that they would work together to resolve issues through direct discussion and arbitration. (Id.) The CNA representatives assumed the responsibility of preparing an initial draft of the proposed LRA. (Id. ¶ 16.) Written drafts of the proposed LRA were then exchanged between the parties. (Id. ¶ 17.)

The proposed LRA contained an "Election Procedure Agreement" which defined certain terms and conditions governing any organizing the CNA might conduct among Registered Nurses employed by Fallbrook. (Id. ¶ 18.) According to these terms, the CNA was entitled to commence organizing among RNs employed by Fallbrook by serving a "Notice of Intent to Organize." (Id. ¶ 19.) In order for the "Notice of Intent to Organize" to be effective, the CNA would have to serve any such "Notice" within 48 hours of being notified by Fallbrook that it had received written notification from another specified labor organization that the other specified labor organization was

commencing its own organizing activities among employees other than RN employed by Fallbrook. (Id. ¶ 20.) Around April, 10, 2012, an attorney from the other specified labor organization informed Carmody by telephone that a "Non-RN Notice of Intent to Organize" would be served later that day upon Fallbrook. (Id. ¶ 21.) Following that telephone conversation, the other specified labor organization served Fallbrook with a "Non-RN Notice of Intent to Organize." (Id. ¶ 22.)

On April 12, 2012, in a telephone conversation between Don Carmody, Fallbrook's representative, who is also an attorney, and Jane Lawhon, legal counsel for the CNA, Carmody informed Lawhon about Fallbrook's receipt of the Non-RN Notice of Intent to Organize." (Id. ¶ 23.) In that conversation, both discussed the fact that the proposed LRA required the CNA to satisfy the 48 hours requirements in order to serve an effective "Notice of Intent to Organize" the registered nurses at Fallbrook. (Id.) They also discussed that although Fallbrook and the CNA expected the proposed LRA would be mutually executed relatively soon, they were still in the process of exchanging comments regarding minor modifications to drafts. (Id. ¶ 24.) Further, Carmody proposed and Lawhorn agreed that the parties should simply orally agree to apply the terms memorialized in the most recent written draft copy of the proposed LRA with respect to the following terms: "a) the CNA's service of a 'Notice of Intent to Organize' the Registered Nurses employed by Fallbrook; b) [t]he CNA's subsequent organizing activity at Fallbrook; c) [t]he filing of a petition for an election with, and the conduct of a secret ballot election by, the National Labor Relations Board ("N.L.R.B."); and d) [t]he negotiation of an initial collective bargaining agreement in the event the CNA won an election and was certified by the NLRB, including the standard of the conduct of bargaining between the Parties as specified on page 5, Section 4(a)(2) of the Proposed LRA." (Id. ¶ 25.)

Pursuant to the Agreement, the CNA agreed to a standard that would apply to the parties' negotiations of a collective bargaining agreement ("CBA") and that the negotiations would be governed by a private standard developed by the parties whereby

[13cv1233-GPC(WVG)]

1  a private arbitrator would have jurisdiction to decide whether the CNA or Fallbrook
2  had violated the private standard that would apply to the parties' negotiation of a
3  collective bargaining agreement. (Id. ¶ 27.)
4       Pursuant to the terms of the Agreement, around May 16, 2012, the NLRB
5  conducted a secret ballot election among the registered nurses employed at Fallbrook.
6  (Id. ¶ 28.) Around May 24, 2012, the NLRB certified the CNA as the exclusive
7  collective bargaining representative of registered nurses employed at Fallbrook. (Id.
8  ¶ 29.) Around June 12, 2012, pursuant to the terms of the Agreement, the parties began
9  collective bargaining. (Id. ¶ 31.)
10      To demonstrate that the parties were in compliance with the terms and conditions
11 of the Agreement, Plaintiff points to numerous instances where the parties' conduct
12 demonstrate compliance with the Agreement. (Id. ¶ 32.) Moreover, from April 12,
13 2012 until September 26, 2012, Plaintiff claims that the CNA sought to resolve all
14 disputes through the dispute resolution procedure in the Agreement and presents two
15 examples where the CNA informed Fallbrook that it would submit the disputes to an
16 arbitrator. (Id. ¶¶ 33, 34.)
17      In addition, the TAC alleges that on July 3, 2012, the parties participated in a
18 bargaining session pursuant to the Agreement when a dispute arose. (Id. ¶¶ 36, 38.)
19 Mr. Carmody stated that when he told Matthews, the CNA representative, that he could
20 take the matter to binding arbitration in compliance with the terms of the Agreement,
21 Matthews did not state any disagreement that arbitration was the parties' agreed upon
22 forum. (Id. ¶ 42.) Matthews ultimately filed an unfair labor practice charge against
23 Fallbrook with the NLRB. (Id. ¶ 44.) Around July 2012, Plaintiff complains that
24 Defendant breached the Agreement by failing and refusing to negotiate a collective
25 bargaining agreement pursuant to the standards of bargaining defined in the Agreement
26 for the conduct of collective bargaining negotiations between the Parties arising out of
27 organizing activity on the part of the CNA at Fallbrook. (Id. ¶ 45.) Also, the CNA
28 breached the Agreement by failing and refusing to submit to arbitration any disputes

that arose during and were related to the collective bargaining between Fallbrook and the CNA pursuant to the Agreement. (Id. ¶ 46.)

Plaintiff has demanded that the CNA resolve "any and all disputes that arise from and are related to the Parties' negotiations of a collective bargaining agreement in compliance with the terms and conditions of the Agreement by going through binding arbitration with a private arbitrator." (Id. ¶ 47.) The Agreement's Dispute Resolution Procedure is mandatory. (Id. ¶ 49.) Plaintiff has complied with the terms and conditions of the Agreement. (Id. ¶ 50.)

Plaintiff brings this action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.* against Defendant for breaching an implied-in-fact contract by failing and refusing to negotiate a collective bargaining agreement pursuant to standards of bargaining defined by the Agreement for the conduct of collective bargaining negotiations between the parties arising out of organizing activity on the part of the CNA at Fallbrook; and failing to submit any disputes that arose during and were related to the collective bargaining between Fallbrook and the CNA pursuant to the Agreement. It alleges a cause of action for breach of contract and seeks relief in the form of damages, specific performance and declaratory relief.

**A.  Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**B.   Breach of Implied in Fact Contract**

Defendant argues that the TAC fails to state a claim because it does not allege the existence of an implied in fact contract to arbitrate disputes. Plaintiff argues that it has properly alleged an implied in fact contract to submit all disputes to binding arbitration.

An implied-in-fact contract is a mutual agreement shown by the acts and conduct of the parties, rather than by their spoken or written words. Varni Bros. Corp. v. Wine World, Inc., 35 Cal. App. 4th 880, 888 (1995); Cal. Civ. Code § 1621 ("[a]n implied

1  contract is one, the existence and terms of which are manifested by conduct.") "If a
2  written or oral contract did exist, there could be no implied contract because this would
3  be inconsistent with an oral or written contract. Where a written or oral contract exists,
4  any implied agreement would necessarily be an implied term of such written or oral
5  contract . . . ." Id. at 889. The very heart of an implied promise is an intent to promise,
6  Gorlach v. The Sports Club Co., 209 Cal. App. 4th 1497, 1507 (2013), and the conduct
7  alleged must give rise to the specific understanding sought to be enforced, Guz v.
8  Betchel, 24 Cal. 4th 317, 342 (2000). An implied in fact contract arises from a *mutual*
9  *agreement and intent to promise* where the agreement and promise have not been
10 expressed in words. Gorlach, 209 Cal. App. 4th at 1508 (emphasis in original)
11 (citation omitted).

12     A cause of action for breach of implied contract has the same elements as a cause
13 of action for breach of contract, except that the promise is not written or oral but is
14 implied from the promisor's conduct. Yari v. Producers Guild of America, Inc., 161
15 Cal. App. 4th 172, 182 (2008); see also California Emergency Physicians Medical
16 Group v. PacifiCare of California, 111 Cal. App. 4th 1127, 1134 (2003). The elements
17 of a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse
18 for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."
19 Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990).

20     Under the heading THE FORMATION AND EXECUTION OF THE
21 AGREEMENT, the TAC alleges that "[p]ursuant to the terms and conditions of the
22 Agreement, the CNA agreed to a standard that would apply to the Parties' negotiation
23 of a collective bargaining agreement, insofar as the CNA agreed to a private standard
24 developed by the Parties, whereby a private arbitrator would have jurisdiction to
25 resolve disputes between the Parties . . . including any claim by one Party that the other
26 Party had breached the private standard that would apply to the Parties' negotiation of
27 a collective bargaining agreement." (Dkt. No. 20, TAC ¶ 27.) As to the "Agreement,"
28 the TAC is referencing a telephonic oral agreement made between Mr. Carmody and

1 | Ms. Lawhon on April 12, 2012 when they agreed to apply certain terms memorialized
2 | in the most recent draft copy of the proposed LRA. (Id. ¶ 25.) Plaintiff further alleges
3 | "[a]fter the Parties agreed upon the terms of the Agreement, they ratified the Agreement
4 | by their conduct." (Id. ¶ 31.)

5 |   Defendant argues this allegation concerning the formation of the Agreement does
6 | not allege an implied in fact contract but an oral agreement to four specified terms as
7 | laid out in the TAC. The Court agrees. The TAC does not allege acts or conduct of the
8 | parties to demonstrate the existence or formation of an implied in fact contract. The
9 | TAC references an agreement made between the parties but does not allege an "oral"
10 | agreement. Interestingly, based on the Court's prior order, Plaintiff has removed
11 | reference to any "oral" agreement. (Compare Dkt. No. 20, TAC ¶ 33 with Dkt. No. 11,
12 | SAC ¶ 33.) Plaintiff does not allege the conduct that created the implied in fact
13 | agreement to arbitrate all bargaining disputes through mutual assent and intent to
14 | promise. The allegations concerning the formation of the contract reference an oral
15 | agreement, not an implied in fact contract. Therefore, Plaintiff has not alleged the
16 | existence or formation of an implied in fact contract between CNA and Fallbrook, and
17 | therefore, Plaintiff has not properly alleged a cause of action for breach of an implied
18 | in fact contract.

19 |   Defendant also argues that the TAC makes clear that Fallbrook's true complaint
20 | is that the CNA filed unfair labor practice ("ULP") charges before the National Labor
21 | Relations Board ("NLRB" or "Board") and Plaintiff cannot allege that the CNA agreed
22 | to both exclusive arbitration of bargaining disputes, its theory in prior complaints, and
23 | to non-exclusive arbitration of bargaining disputes, its theory in the instant complaint.
24 | Plaintiff contends that the TAC does not allege that the CNA violated the agreement
25 | based on its ULP charges with the Board and seeks no relief requiring to Union to
26 | abandon their Board charges.

27 |   In the prior complaints, Fallbrook alleged that the filing of unfair labor practice
28 | charges before the NLRB constituted breach of the Agreement to bring all disputes

1  before an arbitrator. The Court previously dismissed the complaints because Fallbrook
2  failed to demonstrate a "clear and unmistakable" waiver of the right to file NLRB
3  charges. (Dkt. No. 19.) Plaintiff now argues that the TAC "***does not allege the Union***
4  ***violated the Agreement due to the fact the Union filed ULP charges with the Board***
5  ***and seeks no relief requiring the Union to abandon, or to otherwise impact, their***
6  ***Board Charges***." (Dkt. No. 25 at 3.) Plaintiff asserts that disputes can be subject to
7  both unfair labor practice proceedings as well as an arbitration arising out of a
8  grievance. Therefore, the TAC now alleges that the CNA's failure to submit disputes
9  to arbitration breached an implied in fact contract between the parties.

10       While Plaintiff does not allege that the CNA violated the Agreement by bringing
11 a ULP charge before the Board and does not seek to have the CNA abandon the Board
12 charges, the Court concludes that Plaintiff seeks to indirectly challenge the CNA's ULP
13 charges before the Board. Plaintiff has redrafted its TAC to avoid dismissal based on
14 the Court's prior orders. Plaintiff has given up the theory that pursuant to the terms and
15 conditions of the oral CBA, the parties waived their right to resolve any dispute by
16 filing an unfair labor practice charge with the NLRB and all disputes should have been
17 submitted directly to the arbitrator. However, the TAC alleges that in July 2012, which
18 is when the CNA filed ULP charges with the Board, the CNA breached the Agreement
19 by failing and refusing to submit any and all disputes that arose during collective
20 bargaining to binding arbitration. (Dkt. No. 20, TAC ¶¶ 46, 47.) In addition, it alleges
21 the Dispute Resolution Procedure, ie arbitration, is mandatory, implying that Defendant
22 had no choice but to bring its disputes to arbitration. (Id. ¶ 49.) While Plaintiff argues
23 that it does not ask the CNA to abandon, or to otherwise impact, the Board charges, it
24 defies reason that CNA would bring the same disputes before the Board and to
25 arbitration. Moreover, Plaintiff alleges that arbitration is mandatory as to "any and all
26 disputes" which implies that Defendant's only avenue to resolve disputes is through
27 arbitration.

28       Plaintiff is essentially alleging breach of contract based on Defendant's filing of

ULP charges before the Board and its failure to submit the disputes to mandatory, binding arbitration. As such, the issue arises as to whether there was a "clear and unmistakable" waiver by Defendant of the right to file ULP charges before the Board, which Plaintiff failed to allege in prior complaints. Thus, the Court concludes the TAC fails to state a claim for breach of contract for failing to submit disputes to arbitration.

In sum, the breach of an implied in fact contract fails to state a claim as well as the relief it seeks for damages, specific performance and declaratory relief. Accordingly, the Court GRANTS Defendant's motion to dismiss the TAC for failure to state a claim for relief.

## Conclusion

Based on the above, the Court GRANTS Defendant's motion to dismiss. In the prior order, the Court indicated that it would grant Plaintiff one last chance to remedy the deficiencies in the complaint which it has failed to do so. Accordingly, the Third Amended Complaint shall be dismissed with prejudice and Plaintiff is denied leave to amend. The hearing date set for June 20, 2014 shall be **vacated**.

IT IS SO ORDERED.

DATED: June 18, 2014

HON. GONZALO P. CURIEL
United States District Judge